We're ready to hear arguments in our first case, Jensen v. West Jordan City. I see council is ready. You may proceed. I hope that was a skiing accident. Well, okay. That's not ski season yet. That's fun too. Your Honors, my name is April Hollingsworth and I represent Aaron in this case against West Jordan City. The district court made three errors below. One, in reducing the $2.77 million verdict to $335,000. The second, and as we said in the briefing that encompasses two errors that I'll get into, but the second error was reducing the and the third was not allowing Mr. Jensen to amend his complaint to add Robert Schober in his personal capacity, although Schober had always been a defendant in his official capacity. On the first issue on instructions, what decision of the district court are you appealing? You filed a motion post-judgment. Tell me how this occurred. Okay. So first you had an instruction conference, I assume. We had an instruction conference. Did you offer instructions? Did you propose instructions? Well, no. What I said is that it doesn't make sense to ask the jury to apportion damages. So you did not? So I never asked for an instruction because I didn't believe that and I don't believe that there was any logical way to ask the jury to apportion damages under these circumstances. So then you had the trial. The other side apparently proposed this apportionment. Not exactly. They proposed a different verdict form than the court created on its own. So both sides wanted something at the end. So, yeah, there were Then you had the trial and we know the rest of the story. And then after the court apportioned and followed, required the jury to follow an apportionment and had them go back and recount what they were doing, then what did you do? So, and I want, that's an important step and I want the court should pay close attention and read the transcript of what the jury initially decided. That's it in the record at 12-01. After that, the jury, we had a discussion at the bench. Counsel said we believe that this is an inconsistent verdict. Initially, the court said, well, I think it's obvious that they just intended that the amount at the end was the whole amount of damages. Counsel for West Jordan objected again and ultimately the court decided Because it was inconsistent. When you add up all the zeros, you don't get to that big number. I actually, Your Honor, don't believe that it was inconsistent. Okay, but that was their argument. That was their argument. The court accepted that. Right. If you read over the verdict form actually, what it asks is, you know, for each question, did Mr. Jensen prove retaliation under Title VII, for instance? Yes or no? Yes. And then what is the amount of damages he proved that Mr. Jensen suffered as a result of the Title VII retaliation? I think them putting zero on that makes perfect sense because what they were saying and what they testified to later was that we didn't see how you could apportion these damages. So I don't believe it was inconsistent. But assuming it was, so I asked the judge, well, can I make an argument then? And he said no. So there's no instructions to the jury on how they're supposed to do this. What they have been instructed in is that they are not to award the same damages twice. That's clear in the instruction. So I don't know what the jury was supposed to do in this situation. And so when the court then accepted the jury's second verdict form and entered judgment, you filed a motion to alter? Right. To reinstate the full amount of the verdict. Okay. And what's our scope of review on that denial? Because that's where we are, right? Right. And the parties discussed this in the briefs. Our position is that it's a de novo review because it is the application of law, not facts. So even though I could find nothing in the record of a similar situation, I think based on this court's repeated assertions in other contexts that when we are reviewing the decision on applying the law, it's a de novo review, then I think that most accurately fits the situation. And what is the law we should apply here? Well, the law, there's you know, the second restatement of tort which says the court shouldn't, damages shouldn't be in a proportion unless they're capable of being divided. There is law that says that the jury's intent should stand. So those things are what I think the court has to do. But there's no law that says that they have to apportion the verdict. And their initial, I think their initial verdict. Well, you had multiple claims. I mean, isn't that the problem here? Right. And Your Honor, I want to tell the story afterwards when, you know, when the dust settled and I thought back on all this, I thought, you know, in that hour and a half that we had in between the first verdict and the second, I wish that I had been thinking clearly, I wish I could have foreseen this and just dropped the Title VII claim. And I thought, what if I had, you know, been able to think about this quickly enough, call the judge and say, okay, we're going to drop the Title VII claim, let's tell the jury that and now they just have to decide. Yeah, it's sort of a lesson learned too late. I mean, multiple claims arising out of the same harm. Right. And Your Honor. So pick one, you know. Right. But we don't have to pick one. But what my point is, if I had come, if I had been able to foresee that and come up with this really arbitrary decision to drop one of our four claims, then we wouldn't be here. But that's, that is, epitomizes how arbitrary this decision was. Or if the Title VII hadn't been the first one on the page, you know, then they could have just put a That brings me to my point. It does seem pretty clear that the jury thought, at least the second time around, that everything was supposed to total up to the bottom line. Right. I'm not sure that that was the intent, even the first time around. I sort of thought maybe you were trying to tell the jury and what I think they tried to follow was put zero in the amount where this, the difference between the various claims, meaning the damages are the same on all the claims. Right. But if they would have put the total damages as to each claim on the first verdict, it would not have totaled up, which is what they seem to be instructed to do the second time around. Does that make sense? I mean, well, no, nothing about this matter. Right. The verdict form was the same both times. But, yes, I see your point. What to have, what I guess I was They did two different things, though. The second time around they clearly thought, oh, we're going to have to make this total up, so here's how we're going to do it. Right. I mean, they were told to apportion the damages. So that suggests put some of the damages on this claim and some on this claim and some on this claim and some on this claim. And they didn't seem to understand that the second time around. Right. Right. You know, if they had put the 1.75 million on each of the places where it said emotional distress and then for each question where it said what is about these is over and above the last question that they had put zero then. And that's the problem. There has to be in the instruction, the jury form that they were given, they were not to include the amount they had previously awarded in the prior claim. So you couldn't have put the same, same, same, same, same. Right? I mean, it would have been better for you in the end. I appreciate that. But I don't think that's what the verdict form required. So well, for instance, I'm looking at verdict form number five. It says what is the amount of damages if any Mr. Jensen proved by preponderance of the evidence that he suffered as a result of malicious prosecution. And they put 4,000 and then 5,000 for the non-economic damages. If on question six, then they had, it said what is the amount of these that is different than in addition to the damages you found in question two above, if they had put zero and zero, then it wouldn't make sense. Right. So I don't think either verdict makes sense. That's my problem. I think what you're saying is that you can't state the first verdict or at least the total sum of the first verdict. Right. The problem is the first verdict is flawed as well. Well, I think the form is flawed, but I think actually, as I said to Judge Briscoe, I think that it is, it makes the best sense to say we couldn't say that he proved any damages are specific to the Title VII claim, so therefore we put zero. But at the end, the whole amount of damages we found them liable for for their illegal conduct are these amounts. I think that actually does make sense, and so therefore I think that first verdict makes more sense than what they were asked to do without any instructions afterwards. And if I'd had the opportunity to argue anything, I would have, of course, disregard that Title VII. And again, this is an issue of law, according to your argument, and again, what case are we to rely on or cases? I think the restatement of torts. The whole thing? I'm sorry? The whole thing? No, the part that says, the part about the damages that you can't, the damages should only be allocated when they are capable of being divided. And, you know, no one has explained in this case, not the court, not West Jordan, how the court could have actually told the jury how do you separate the damages and say, okay, the Title VII claim, which is based on retaliation for this protected conduct, has different damages than the First Amendment claim, which is based on retaliation for the protected conduct. It makes no sense when the damages and the conduct are all the same. But the problem here for the jury is that with all of these claims and the rest of the instructions they were given, all the claims had different elements. So they had to walk through each claim. Right. And they could have found no liability on one or other of the claims, or I could have thrown out the Title VII, they still would have said the same amount. According to them, they still would have said the same amount per claim. And did the district court consider the, was it an affidavit from the jury foreman? He never mentioned it. I didn't see it mentioned, but it was submitted with your pleading before the court, before he ruled? Well, in our motion for, to reinstate the verdict, the motion to amend the verdict, it was included in that. And I'm down to two minutes, so I'll reserve the rest of my time for rebuttal. May it please the court. My name is Dani Sepernich for West Jordan City and Lieutenant Robert Schober. If possible, I'd like to focus the first portion of my time today on Mr. Jensen's argument regarding the application of the damages cap and the remainder on West Jordan's argument on its cross appeal, specifically focusing on two aspects, that West Jordan was entitled to judgment as a matter of law on Mr. Jensen's Title VII claim and also the Section 1983 claims. With respect to the damages cap, it's difficult to identify exactly what is being challenged here and therefore what standard of review applies. To the extent that Mr. Jensen raises an argument about the form of the verdict form that was submitted to the jury, that's reviewed for abuse of discretion as set forth in Johnson v. Kansas City. And then if we're looking at the second issue about the actual application of the cap to the verdict that the jury rendered, it's unclear if that would be a de novo standard of review because it does appear to be somewhat of a question of law, but it's also an application of the law, which is the caps, to the particular facts of this case, which is the type of damage that the jury awarded. So turning to the first issue about the verdict form, the second time that the jury went out, it was not actually required to apportion damages in the sense that it was required to put some on one claim and some on another. It was very much given the opportunity to say that each of the damages for the claims, with the exception of breach of contract, for which you can't get emotional distress damages, were exactly the same. There were two lines. So the first allows the jury to identify what total amount of damages Mr. Jensen suffered in connection with each claim, and then immediately under it, the jury was asked to identify what portion of those damages, if any, were different from the other claims. So those individual lines did not need to add up to the total. They very well could have been the same as the total amount that the jury put at the end of the verdict form. So I guess you're saying that they could put the same amount, they just couldn't put zero? Exactly. Because the argument, once the jury came back with a zero award for each, is if the jury really did find that the total damages Mr. Jensen suffered in connection with each specific claim was zero, then how could it possibly have found $2.7 million in total damages? But doesn't the court say something like, go back and do your best to apportion? The district court did say to go back and to allocate to the best of its ability as required by the form. And the form did allow, again, the jury to identify the specific amount total for each claim, and then if any was different. It was never told that it needed to add to a portion, again in what we would think of as the traditional sense of putting $10 here and $10 here. It could have said that $20 was the total for each of them, and that there was no difference among the damages suffered for each claim. Well the jury, I'm sorry, but didn't the jury clearly, they must have understood that they thought, when they went back, this is all supposed to total up. We've got to make this same number that we gave you the first time total up somehow. And so they did. I mean, it's clear that they didn't understand. And I have to say, I don't know that I would understand from reading this that they don't have to total up. Especially when they got sent back a second time. They seem to think that's what they were sent back for. And with all due respect, I believe part of that confusion came from the argument that Mr. Jensen's counsel made at the close of trial with the reference to just putting zero for that line that Your Honor mentioned a moment ago. That explains the first time around. How does it explain the second time around? So I think that the second time around, you could interpret it that the jury understood that if it was possible, it was to identify the total amount for each claim and any amount that was different. And it's important to keep in mind here that there are different elements that are required for the various claims. This is particularly important with policy makers. So three specifically identified final policy makers, not all employees of West Jordan. And then with the breach of contract claims, there were different damages that were available and also different conduct that was at issue. And Mr. Jensen hasn't raised an argument on appeal and did not clearly raise to the district court that the verdict was irreconcilably inconsistent, which is what it seems may now be the argument. But we would maintain that that's been waived because it wasn't specifically briefed. And in order to maintain that type of argument, you have to clearly present the issue to the district court before the jury is released. And although there was some discussion about the second verdict, that wasn't clearly raised to the district court. And again, to the extent that it's a challenge to the district court asking the jury to specifically identify the total for each claim and whether or not any of that was different, that would be an abuse of discretion. And that hasn't been shown here where there are different claims. This appeal highlights one of the reasons that it was important to know for each claim what the jury found the damages to be. If the court agrees with West Jordan on any portion of its cross appeal that it was entitled to judgment as a matter of law, this verdict would now allow the court to send back the verdict without requiring a new trial to identify whether or not the damages would be different, excluding whatever claim West Jordan were to prevail on. And then again, it's also important for the damages cap, which exists for Title VII, but not for the other claims. So if we accept that the district court did not abuse its discretion in asking the jury to identify these various points or to identify the various damages, and I think it's important to keep in mind that Mr. Jensen, after it was clear that this was the verdict form the district court was planning to use, did not propose or request a specific instruction further explaining how to use this verdict form. I think what would be proposed, I mean, the answer would be we win or we lose. I mean, she voiced the opposition to allocation among the claims. And she said it's all the same claim. So two blanks, you know, yes or no. So if there was a concern that the jury may not understand that the total for each specific claim did not need to be the same total, or that they could find that the damages were equal across the board, if Mr. Jensen believed there was some confusion about that, there could have been a supplemental jury instruction saying, as you're filling out the verdict form, please indicate on the first line what you believe was caused by claim A, and then indicate if that was different from the other claims in any respect. Please note that they do not need to total at the end. You just need to identify for each claim the total amount of damages, and then that could be the same as the total at the end. There was no similar instruction. So I guess I, what would you, if we disagree with you and we think that it was legal error to apportion the damages, the verdict form, both verdict forms were in error, obviously, what would you say the remedy should be? I believe it depends on what precisely the error is. If it was that asking for an identification of the damages for each claim, then I think that it's possible to rely on the total amount, but if it's that asking for the identification for each claim is permissible, and there was something wrong with this specific verdict form, I believe the appropriate remedy is to send it back for a new trial, because under Rule 606, it's improper for the court to rely on a juror's testimony about the intent of the jury. There is an exception for mistakes, but the advisory committee comments to that rule makes it very clear that that's limited to the clerical-type mistake of writing down something that's different, and the district court did actually address the juror's affidavit in the ruling on post-trial motions in a footnote, and refused to consider it. So I don't think it's proper on appeal for the court to hypothesize or substitute the judgment about what the jury intended if it was not an abuse of discretion to ask, not for an apportionment, but for an identification of the total damage suffered in connection with each claim. So in that event, it would require a new trial, in our cases, in this case. The district court properly applied the damages cap that's found in Section 1981A. That cap limits the type of damages that are recoverable in a Title VII claim. Here, because West Jordan fits within the largest category, that cap would be $300,000, and Mr. Jensen has not argued that it was inappropriately applied to the non-economic emotional distress damages, so that portion of the ruling is undisputed. The question really is whether or not the district court erred in applying the cap to the economic damages that Mr. Jensen was awarded, and it's undisputed that those damages are to compensate him for what he argued was a lost opportunity to obtain the full measure of his retirement benefits under the Utah retirement system. For law enforcement, in order to do that, you need to work at 20 years within a law enforcement position in the state of Utah, and he argued that because of West Jordan's conduct, he was no longer going to be able to find a new position in law enforcement, and therefore would be unable to obtain that additional seven and a half years that he needed. He argues that this makes those damages similar to front pay or back pay, but this case is fairly unique in that at the time of the alleged retaliatory conduct, Mr. Jensen was no longer employed by West Jordan. He had resigned approximately one year earlier as a settlement of a sexual harassment complaint that although tangentially related, is separate and distinct from the retaliation that's alleged in this case, so at the time of the alleged retaliatory conduct, he was not employed as a law enforcement officer, was not currently working toward obtaining that seven and a half additional years, and had no present right to the full amount of that retirement benefit. So his argument is really that the retaliation caused such damage to his reputation and affected his life to the degree that he would no longer be able to be qualified to work as a law, or no longer be able to obtain employment as a law enforcement officer. That's pretty true, isn't it? I mean, he can't be certified because even expungements show up, and I don't think too many law enforcement agencies are going to accept someone for certification with this kind of a charge on his record. That's an issue that we've raised in our cross appeal as well, that Mr. Jensen had not established his entitlement to those damages because there was an assumption that prior to the criminal prosecution issue in this case, that he would have been qualified, but there was substantial evidence that that was not the case. Prior to the criminal prosecution, Mr. Jensen had been diagnosed with adjustment disorder, post-traumatic stress disorder. He had voluntarily checked himself into a drug and rehabilitation center because he had been abusing prescription pain medications. He had had suicidal... And during all of those things, was he still employed by West Jordan as a police officer? No, he was not. So this all occurred... That's all afterwards? This occurred after his voluntary resignation to settle his sexual harassment complaint, which he released all claims in connection with, and the time that he was criminally prosecuted. So this is within that one-year window where Mr. Jensen experienced severe issues in his life that couldn't possibly be related to the criminal prosecution, which had not yet occurred. There, again, were issues with prescription pain medication abuse. He had an altercation with a different police department in which he had to be handcuffed because he was aggressive toward the police officers that responded. And where an individual has these types of issues that arguably on their own would preclude him from maintaining his post-certification or being qualified to be employed by a new law enforcement department, particularly given that he had worked in narcotics and now had an issue with abusing prescription pain medication. West Jordan's position is that something more than his own testimony about his lifelong dream to be a police officer was required to establish that he actually could have, but for the criminal prosecution, found new employment in the law enforcement field going forward. And the Williams case, I believe, that we've cited from the Seventh Circuit is perhaps the best for distinguishing front pay and back pay, which are typically equitable remedies that are awarded by the court, from this type of lost future earning that is based on an alleged damage to reputation. Really, it's a form of consequential damage that comes from the alleged damage to reputation. It's not designed to put Mr. Jensen back into the same position he was the day before the prosecution, which again was unemployed in the law enforcement field and not presently working toward his full 20 years of obtaining the Utah retirement system. And so we believe that accepting that it was not an abuse of discretion for the court to allow the jury to specifically identify the total damages suffered with each claim, which did not require an apportionment to one over the other, the district court then properly applied the damages cap to reduce the Title VII award that the jury found for that particular claim. Thank you. Thank you. Your Honor, to quickly address counsel's argument, whether you call this back pay or front pay, Mr. Jensen's economic damages were already, those losses had already occurred by the time of the trial and were measurable at that time, even though he wouldn't have started necessarily earning the retirement benefits at issue. So it is an economic damage that was recoverable under the original Title VII, and I encourage this court to look at the, and adopt the EEOC's enforcement guidance on what are the prospective economic relief that was for the new Title VII. But I want to go back to what we were talking about before. You asked about what law you should be following. In our opening brief, we cited to this court's decision in U.S. Industries, Inc. v. Touche, Ross & Company, and it said that where a single injury gives rise to more than one claim of relief, a plaintiff may recover his damages under any claim but may recover them only once. So I think that's the most obvious principle that applies here. Had Mr. Jensen, or sorry, had the jury put different damages under each of these claims, if I had been West Jordan, then I would have said, well, these are duplicative damages for one injury and he can't recover that. So what the jury did makes the most sense. This court also said in Bell v. Middleton that where the intent of the jury is clear and is easily rectified, then the court should just correct the error. So that's what we ask the court to do here, is correct this error, reinstate what is obviously the intent of the jury, and what makes the most sense to award the full amount of the verdict that they issued to Mr. Jensen. Thank you. Thank you, counsel. Thank you both for your arguments this morning. The case is submitted.